CITY OF NEWARK *v.* STATE OF NEW JERSEY.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW
JERSEY.

No. 469.   Argued March 2, 1923.—Decided May 7, 1923.

1. The Equal Protection Clause of the Fourteenth Amendment cannot be invoked by a city against its State. P. 196. *Trenton* v. *New Jersey, ante,* 182.
2. So *held,* where it was claimed that the method adopted in c. 252, Laws of New Jersey, 1907, for fixing maximum amounts of water divertible without payment of license fees to the State, worked

---

arbitrary discriminations, prejudicial to the City of Newark. P. 195.

Writ of error to review 117 Atl. 158, dismissed.

ERROR to a judgment of the Supreme Court of New Jersey, affirmed by the Court of Errors and Appeals, in favor of the State, in its action to recover license fees from the City of Newark, for water diverted from the Pequannock River.

*Mr. George W. Wickersham,* with whom *Mr. Jerome T. Congleton* was on the briefs, for plaintiff in error.

*Mr. William Newcorn,* Assistant Attorney General, with whom *Mr. Thomas F. McCran,* Attorney General, of the State of New Jersey, was on the brief, for defendant in error.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The State of New Jersey recovered judgment against the City of Newark for $18,104.08 and costs, in an action brought in the State Supreme Court. The judgment was affirmed by the Court of Errors and Appeals, and the case is here on writ of error. It is based on a state enactment which is attacked on the sole ground that it violates the equal protection clause of the Fourteenth Amendment.

The State's right to recover depends upon the validity of an enactment of the State (c. 252, Laws of 1907) which is sufficiently set forth in the decision of this Court in *Trenton* v. *New Jersey,* handed down on this day, *ante,* 182.

In *East Jersey Water Co.* v. *Board of Conservation & Development,* 91 N. J. L. 448, 453, it is said:

"The statute requires payment 'for all such water hereafter diverted in excess of the amount now being legally diverted,' with the proviso that no payment be required until the legal diversion shall exceed one hun-

dred gallons per day per capita.  We are of opinion that
'legally diverted' means not a future diversion, but one
now being exercised under a legal right, and that under
this statute a legal abstractor may take what he was di-
verting in 1907, and, if that did not reach the statutory
maximum of exemption, as much more as is required to
make the total diversion one hundred gallons per day per
capita for each of the municipalities supplied, without
payment of the license fee.

" If, in 1907, the daily diversion exceeded one hundred
gallons per capita, the amount then diverted, if lawful,
may be taken without payment, and if it was less, no
license fee can be imposed until it exceeds the statutory
quantity."

The complaint alleged that under the provisions of this
act the City was " permitted to divert  . . .  an aver-
age daily free allowance of water to the amount of 36,241,-
666 gallons, the said last mentioned amount being the
amount of water which was being diverted by said mu-
nicipality on June 17th, aforesaid, the date when the act
aforesaid became effective and operative "; and claimed
for each of the years subsequent to July 1, 1914, a license
fee of one dollar per million gallons for the excess of the
daily average diversion of water over the quantity above
specified.  The answer alleged that prior to the passage
of the Act of 1907, the City had acquired a plant capable
of furnishing 50,000,000 gallons of water per day, and set
up certain separate defenses.  At the trial, the court on
motion of the State, struck out the separate defenses; the
facts were not in controversy, and judgment was given
for the amount claimed.  About the same time, the State
also recovered judgment against the City of Trenton for
the license fee imposed by the same act.  Both cases were
taken to the Court of Errors and Appeals, the highest
court of the State, and there by one decision the judg-
ments were affirmed.  (117 Atl. 158.)  That court said:

" The facts are not in dispute. It is conceded that the city of Trenton, at the time of the enactment of the act of 1907, was taking from the Delaware river daily 14,200,-000 gallons of water for local use, and that the city of Newark was daily extracting from the Pequannock river 36,241,666 gallons for local use. These diversions represent the antestatutory flowage, and are considered by the state under the eighth section of the act of 1907 to be non-taxable."

To establish its contention that § 8 of the enactment in question so discriminates between those authorized to divert water that it violates the equal protection clause of the Fourteenth Amendment, the City says that the highest court has in this case construed the words " now being legally diverted " to mean the amount of water which was actually diverted on the day when the act went into effect, namely, June 17, 1907; that had the City flowed into its mains 50,000,000 gallons that day, the tax would have been levied only upon the excess over that amount, and on the facts shown in the complaint, there would have been no tax in the years above referred to; that the purely accidental figure of 36,241,666 gallons, the amount actually diverted on that day, will for all time be the basis of the assessment of the tax upon the City. It is suggested that cities less populous by one-half than Newark, but owning plants far in excess of their needs might have diverted on June 17, 1907, twice the amount of water which the City of Newark diverted, and that a city twice as large might have diverted half as much, and the former of such cities would thereby have procured an almost perpetual exemption, and the latter would have brought on itself an insupportable burden of indefinite duration; and that accidents of climate, of conflagrations and of breaks in the mains on the critical date, June 17, 1907, would have resulted in increasing the exemption.

The enforcement by the State of the provision of the act imposing upon the City the specified annual payments for such diversion of water does not violate the equal protection clause of the Fourteenth Amendment. The regulation of municipalities is a matter peculiarly within the domain of the State. In *Trenton* v. *New Jersey,* decided this day, *ante,* 182, it is held that the imposition of the license fee specified in this act is not a taking of property of that city in violation of the Fourteenth Amendment. The reasons supporting that conclusion apply here. The City cannot invoke the protection of the Fourteenth Amendment against the State.[1] Considering the former opinions of this Court, there is no substantial federal question in the case.

                              *The writ of error is dismissed.*

---

[1] Cf. *Williams* v. *Eggleston,* 170 U. S. 304, 310; *Mason* v. *Missouri,* 179 U. S. 328, 335.